Reed W. Larsen (3427)
Javier L. Gabiola (5448)
COOPER & LARSEN, CHARTERED
151 North 3rd Avenue, 2nd Floor
P.O. Box 4229
Pocatello, ID 83205-4229
Telephone: (208) 235-1145
Facsimile:  (208) 235-1182

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CLAY SCOTT BAKER, M.D., | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR BREACH OF CONTRACT AND BAD FAITH REFUSAL OF INSURER TO PAY DISABILITY CLAIM AND DEMAND FOR JURY TRIAL** |
| GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, a New York Corporation and BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA, a Massachusetts Corporation | |
| Defendants. | |

FOR PLAINTIFF'S CLAIM FOR RELIEF HEREIN, Plaintiff alleges as follows:

**GENERAL ALLEGATIONS**

1.

Plaintiff Clay Scott Baker, M.D., an individual, is a resident of the City of Pocatello, County of Bannock, State of Idaho.

2.

Defendant Guardian Insurance Company of America is a corporation organized under the law of the state of New York and licensed to do business in the State of Idaho and to issue policies for disability insurance coverage. Plaintiff shall refer to Defendant Guardian Insurance Company of America as "Guardian" throughout this Complaint.

3.

Defendant Berkshire Life Insurance Company of America is a corporation organized under the law of the state of Massachusetts and licensed to do business in the State of Idaho and to issue policies for disability insurance coverage. Plaintiff shall refer to Defendant Berkshire Life Insurance Company of America as "Berkshire" throughout this Complaint.

4.

Plaintiff obtained disability insurance Policy Number Z0839270 in September 2005 and Policy Number Z9281080 in September 2007 from Defendants. The policies provided coverage in the event Plaintiff were to become disabled. Copies of the policies are attached hereto as Exhibits A and B respectively and are incorporated herein by reference. The policies were in full effect and in force from approximately 2005 and 2007 up through the present, when Plaintiff was diagnosed with toxic encephalopathy, toxic effect mycotoxins, immune deregulation, hypogammaglobulemia, vasculitis, autonomic nervous system dysfunction, allergic rhinosinusitis, allergic food gastroenteritis, chronic fatigue, arthralgia, sleep apnea, cognitive disorder, adjustment disorder with mixed anxiety and depressed mood, chemical/environmental sensitivity, chronic pain, neurocognitive dysfunction, social isolation and withdrawal and was deemed to be totally disabled pursuant to his

pursuant to his medical doctors and providers and consistent with the definition of disability as outlined in Guardian's and Berkshire's disability policies. Plaintiff has paid all premiums due under the policies and performed all of the conditions required by the policies.

5.

In 2012, Plaintiff, at the advice of Guardian and Berkshire, filed a notice of claim and complied with all of the policy requirements for partial disability. That notice of claim was sent to Guardian by express mail. A copy of that express mail is attached as Exhibit C. Despite signing and receiving for this notice, Guardian and Berkshire denied that they received the material. Guardian and Berkshire recommended to the Plaintiff that he file for residual partial disability back to June of 2008 which Plaintiff did. Guardian and Berkshire denied the claim. Thereafter, for the period of October 2, 2011 to May 2, 2012, Guardian and Berkshire paid Plaintiff benefits pursuant to the polices, but then alleged that they had overpaid Plaintiff in the amount of $30,000. A copy of the letter reflecting this is attached hereto as Exhibit D and incorporated herein by reference. Prior to that, Plaintiff's counsel notified Guardian and Berkshire of their representation of Plaintiff. A copy of that letter is attached hereto as Exhibit E and is incorporated herein by reference.

6.

On September 10, 2012, Guardian and Berkshire sent a letter to Plaintiff's counsel, indicating, in part, that they requested additional information and medical records reflecting Plaintiff's treatment. A copy of that letter is attached hereto as Exhibit F and is incorporated herein by reference. Thereafter, on September 12, 2012, Plaintiff's counsel sent Guardian and Berkshire a formal appeal letter, and enclosed a letter from Dr. Marvin L. Sponaugle, who had been treating

Plaintiff, and who had concluded that Plaintiff had been suffering from a complex condition that affected his practice of medicine since 2008, related to a mold-born affliction. A copy of that letter is attached hereto as Exhibit G and incorporated herein by reference. In that letter, Plaintiff through his counsel requested that Guardian and Berkshire reconsider and reinstate disability benefits from 2008 without interruption. They also made a demand pursuant to Idaho Code § 41-1839.

7.

On September 25, 2012, Guardian and Berkshire sent a letter to Plaintiff's counsel, acknowledging receipt of Dr. Sponaugle's report, and again mentioning the $30,000 overpayment made to Plaintiff, and requested copies of Plaintiff's paycheck stubs, his monthly CPT codes and specific authorizations of Plaintiff's providers. A copy of that letter is attached hereto as Exhibit H and incorporated herein by reference. Thereafter, on October 9, 2012, Plaintiff's counsel sent Guardian and Berkshire a letter enclosing lab reports from Dr. Dennis Hooper, as well as Dr. Hooper's report noting Plaintiff's disability from 2008 to present. A copy of that letter is attached hereto as Exhibit I and incorporated herein by reference. Plaintiff through his counsel also indicated that the $30,000 overpayment would ultimately be owed, and that would be an offset from future disability benefits owed from 2008 to present. Plaintiff also through counsel in that letter provided CPT codes requested and provided releases for Koke Mill Medical Associates and Dr. Jeffrey Dean and again reminded Guardian and Berkshire that the letter was being sent pursuant to Idaho Code § 41-1839, that it was a proof of loss and requested a response within 30 days.

8.

On November 13, 2012, Plaintiff's counsel sent a letter to Guardian and Berkshire's representative noting receipt of the representative's voice mail, and indicated that because of Hurricane Sandy, the representative was unable to receive calls. A copy of that letter is attached hereto as Exhibit J and incorporated herein by reference. In addition, on November 26, 2012, Plaintiff's counsel sent a letter to the same representative of Guardian and Berkshire noting there had been no return correspondence or phone call, despite efforts made by Plaintiff's counsel to contact a representative and requests that Guardian and Berkshire expedite processing of the claim. A copy of that letter is attached hereto as Exhibit K and incorporated herein by reference.

9.

On November 30, 2012, Plaintiff's counsel sent Guardian and Berkshire's representative a letter, responding to and providing information related to Plaintiff's practice's manager, Plaintiff's income, and ownership interest in his former medical business, the CPT codes, as well as records from Dr. Sponaugle. A copy of that letter is attached hereto as Exhibit L and incorporated herein by reference. On December 11, 2012, Guardian and Berkshire's representative sent a letter requesting additional information regarding Plaintiff's CPT codes and employment agreements. A copy of that letter is attached hereto as Exhibit M and incorporated herein by reference. On December 28, 2012 Plaintiff's counsel sent Guardian and Berkshire's representative an additional letter providing additional records, including Plaintiff's payment records, his Employee Agreement and Entitlement Formula Agreement. A copy of that letter is attached hereto as Exhibit N and incorporated herein by reference.

10.

On January 28, 2013, Plaintiff's counsel sent Guardian and Berkshire's representative a letter again noting that some time had passed since the last letter, that a representative and Guardian and Berkshire had been provided all documents that they had requested, and again, pursuant to Idaho Code § 41-1839, indicated they should have had a response to their proof of loss some time ago. A copy of that letter is attached hereto as Exhibit O and incorporated herein by reference.

11.

Thereafter on May 10, 2013, Guardian's and Berkshire's representative sent a letter noting that per their February 27, 2013 letter, a residual disability benefit payment was issued to Plaintiff at 50% of his policies' respective monthly indemnities from May 2, 2012 to November 1, 2012 under a reservation of rights. A copy of that letter is attached hereto as Exhibit P and incorporated herein by reference. In addition, Guardian's and Berkshire's representative again requested further information related to Plaintiff's income tax returns for 2012, pay stubs from his family practice, monthly payment analysis reports from Intermountain Medical Clinic, monthly CPT codes and gambling earnings. Guardian and Berkshire also requested another authorization as well as attending physicians' progress reports. On May 14, 2013, Plaintiff's counsel sent a letter to Guardian's and Berkshire's representative indicating they would provide documents requested per their May 10, 2013 letter. A copy of that letter is attached hereto at Exhibit Q and incorporated herein by reference. Plaintiff's counsel also indicated that they would provided additional treatment records, as well as Plaintiff's tax returns and specific responses again itemized in the May 10, 2013 letter.

12.

On June 5, 2013, Guardian and Berkshire's representative sent a letter to Plaintiff's counsel confirming receipt of Plaintiff's counsel's May 14, 2013 letter, along with a Separation Agreement and release signed by Plaintiff. Guardian and Berkshire also again requested additional information per their May 13, 2013 letter. A copy of that letter is attached hereto as Exhibit R and incorporated herein by reference. On June 13, 2012, Guardian or Berkshire sent a letter denying Plaintiff benefits for the period of June 1, 2008, to October 2, 2011. A copy of that letter is attached as Exhibit S. On June 17, 2013, Plaintiff's counsel sent a letter in follow up to Guardian and Berkshire's May 10, 2013 and June 5, 2013 letters providing information and documentation responsive to those letter. A copy of that letter is attached hereto as Exhibit T and incorporated herein by reference. Plaintiff's counsel further indicated they would be getting updated physicians reports and produce those upon receipt. In addition, Plaintiff's counsel again reminded Guardian and Berkshire that Plaintiff did not have the financial resources to pay for his medical treatment, and he had been diagnosed with mycotoxicosis and mental illnesses, both of which had caused and were causing his disability. Plaintiff's counsel also reminded Guardian and Berkshire that Dr. Baker had been denied benefits again since 2008, and because he was eligible, requested that the benefits be paid, and that immediate attention be given to his claim.

13.

On June 27, 2013, Plaintiff through his counsel sent Guardian and Berkshire additional records and reports related to his employment and billing. A copy of that letter is attached hereto as Exhibit U and incorporated herein by reference. On June 28, 2013, Guardian's and Berkshire's representative acknowledged in a letter of that date, receiving copies of Dr. Baker's 2012 tax returns,

and an article authored by Dr. William Rea, one of Plaintiff's treating providers, in answer to their request for information. Guardian and Berkshire's representative also indicated they disagreed with any assertion stated in the June 17, 2013 letter. A copy Guardian's and Berkshire's June 28, 2013 letter is attached hereto as Exhibit V and incorporated herein by reference. Thereafter on July 12, 2013, Plaintiff's counsel sent Guardian and Berkshire a letter providing copies of a letter from Dr. Soofi indicating she was in disagreement with Guardian and Berkshire's past correspondence, and maintaining that Plaintiff was disabled. A copy of that letter is attached hereto as Exhibit W and incorporated herein by reference. In addition, on July 16, 2013 Plaintiff's counsel sent Guardian and Berkshire another letter, inclosing a letter from Dr. William Rea dated June 9, 2013 detailing Plaintiff's condition and his continuing disability, noting Plaintiff's diagnosis of toxic encephalopathy, toxic effect mycotoxins, immune deregulation, hypogammaglobulemia, vasculitis, autonomic nervous system dysfunction, allergic rhinosinusitis, allergic food gastroenteritis, chronic fatigue, arthralgia and sleep apnea. A copy of that letter is attached hereto as Exhibit X and incorporated herein by reference. Further in that letter, Plaintiff's counsel again informed Guardian and Berkshire of Plaintiff's continuing disability and his inability to engage in any work or work-like activities.

14.

On August 1, 2013, Guardian and Berkshire's representative sent a letter to Plaintiff's counsel, a copy of which is attached hereto as Exhibit Y and incorporated herein by reference. Guardian and Berkshire noted they had forwarded Plaintiff a residual disability benefit at 50% from November 1, 2012 to January 1, 2013 in the amount of $10,000, a total disability benefit from January 1, 2013 to July 1, 2013 minus an adjustment in the amount of $15,000. Guardian and

Berkshire's representative still continued to note uncertainties related to the Plaintiff working in a reduced capacity, and again requested an authorization for additional information as well as a progress report from Plaintiff's physicians. Thereafter, on August 7, 2013, Plaintiff's counsel sent a letter to Guardian and Berkshire noting they provided signed authorizations, and a settlement offer related to Plaintiff's benefits from May, 2008 to present. A copy of that letter is attached hereto as Exhibit Z and incorporated herein by reference. Plaintiff's counsel noted that Plaintiff was owed back benefits from 2008 though 2011 in the amount of $184,800, and then from May 2, 2012 to January 1, 2013 in the amount of $40,000 for payment of back disability benefits in the amount of $224,800. Plaintiff's counsel again indicated that demand was being made pursuant to Idaho Code § 41-1839, and 30 days were given to Guardian and Berkshire to respond to it.

15.

On October 10, 2013, Plaintiff's counsel sent Guardian and Berkshire's representative another letter, updating and supplementing records related to its consideration of Plaintiff's request for ongoing disability benefits and back benefits, providing a copy of the neurological consultation report of Nancy A. Didriksen, Ph.D., and an itemized listing of Dr. Didriksen's findings relating to Plaintiff's continuing and ongoing disability. A copy of that letter is attached hereto as Exhibit AA and incorporated herein by reference. On October 23, 2013, Guardian's and Berkshire's representative sent a letter acknowledging receipt Plaintiff's neuropsychological evaluation, that the matter was being sent to neuropsychologist for review, and they requested additional records from Dr. Didriksen. A copy of that letter is attached hereto as Exhibit BB and incorporated herein by reference. Therein, Guardian and Berkshire's representative indicated they disputed Plaintiff's

entitlement to back benefits and again requested testing related to mold, myotoxins or other chemical substances at Plaintiff's place of employment or home or other areas that had been conducted.

16.

On December 27, 2013, Guardian and Berkshire's representative sent a letter noting their consulting neuropsychologist had discussed Plaintiff's case with Dr. Didriksen, and that they had forwarded the non-psychiatric portions of Plaintiff's medical records to a consulting physician for review. A copy of that letter is attached hereto as Exhibit CC and incorporated herein by reference. Guardian and Berkshire then also requested additional information from Dr. Didriksen, as well as any testing done for molds or myotoxins.

17.

Thereafter on January 17, 2014, Plaintiff's counsel sent Guardian and Berkshire copies of mold reports from Plaintiff's office and home and noted that any updated report from Dr. Didriksen would be provided. A copy of that letter is attached hereto as Exhibit DD and incorporated herein by reference. Thereafter however, Guardian and Berkshire did not respond, and, as of the date of this Complaint, have continued to fail to respond to Plaintiff's requests and demand for payment of back disability benefits and ongoing disability benefits.

**BREACH OF CONTRACT**

18.

Plaintiff realleges paragraphs 1 through 17 above and incorporates the same as though fully set forth herein.

19.

Defendants Guardian and Berkshire have breached the contracts of insurance by refusing to pay back disability benefits and ongoing monthly disability benefits from May, 2008. Defendants Guardian's and Berkshire's conduct constitutes an ongoing breach of contract as Plaintiff is entitled to receive back benefits in the amount of $224,800, plus ongoing monthly disability benefits pursuant to the disability policies of insurance issued by the Defendants Guardian and Berkshire. These monthly disability payments continue through age 65 under the terms of the policies. Defendants' breach of contract through the present by refusing to pay back benefits. Defendants Guardian's and Berkshire's breach of contract is ongoing and continuing with each passing month. Disability payments should continue until age 65 or until the Plaintiff is able to return to work in his own occupation as a dermatologist and mohs micrographic surgeon.

## BAD FAITH

20.

Plaintiff realleges paragraphs 1 through 19 above and incorporate the same as though fully set forth herein.

21.

This action is brought for consequential and extra contractual damages due to Defendants Guardian's and Berkshire's bad faith refusal to pay Plaintiff's valid claim for disability benefits under the disability policies of insurance.

22.

Issuance by Defendants Guardian and Berkshire of the policies of disability insurance, policy numbers Z0839270 and Z9281080, to Plaintiff created a contractual relationship between Defendants Guardian and Berkshire and Plaintiff. Defendants Guardian and Berkshire therefore were subject

to the implied-in-law by duty to act fairly and in good faith in order not to deprive Plaintiff of the benefits of the policies.

23.

Defendants Guardian and Berkshire, through its representatives, agents and employees, acted willfully, fraudulently, intentionally, and in bad faith in denying Plaintiff's disability benefits in spite of the overwhelming evidence that Plaintiff is totally disabled as evidenced by the records and reports from Plaintiff's medical doctors. The denial by Defendants Guardian and Berkshire through its representatives was done knowingly, intentionally, and with the purpose of discouraging, avoiding, or denying the payment due Plaintiff under the terms of the policies.

24.

Defendants Guardian and Berkshire had no legitimate or arguable reason for denying Plaintiff's disability claims, and in refusing to consider the nature and extent of Plaintiff's injuries and disabilities as diagnosed by his medical providers, Guardian and Berkshire intentionally denied Plaintiff's claims without any legitimate or arguable reason for refusing to pay Plaintiff's disability benefits.

25.

As a direct and proximate result of Guardian and Berkshire intentional refusal pay Plaintiff's valid disability claim, and as well as Guardian's and Berkshire's consequent breach of the implied-in-law duty of good faith and fair dealing, Plaintiff has been financially burdened and continues to be financial burdened without sufficient means to provide, care for and support himself.

26.

As a further direct and proximate result of Defendants Guardian's and Berkshire's intentional and wrongful refusal to pay Plaintiff's valid disability claims, Plaintiff suffered significant anxiety

and mental suffering regarding his financial ability to pay his bills, provide for his family and maintain an acceptable standard of living. Defendants Guardian's and Berkshire's breach of the implied-in-law duty of good faith and fair dealing proximately caused Plaintiff significant emotional distress consisting of nervousness, anxiety, emotional unrest and a significant increase in his symptoms which were the basis of the disability claim.

**WHEREFORE**, Plaintiff Clay Scott Baker, M.D. respectfully prays judgment against Defendants Guardian Insurance Company of America and Berkshire Life Insurance Company of America as follows:

1. Breach of Contract: That Plaintiff be awarded past and future damages in the amount of $224,000.00 plus all future benefits;

2. Plaintiff be awarded consequential damages in an amount to be reasonably proven at the time of trial for the economic losses suffered as a proximate result of the Defendants Guardian Insurance Company of America's and Berkshire Life Insurance Company of America's bad faith refusal to pay Plaintiff's valid claims;

3. That Plaintiff be awarded consequential damages for the emotional distress and as a proximate cause of the Defendants Guardian Insurance Company of America's and Berkshire Life Insurance Company of America's bad faith refusal to pay Plaintiff's valid claim as will be specifically proven at the time of trial;

4. That Plaintiff be granted appropriate leave to amend the Complaint to assert a claim for punitive damage; and

5. And for such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

DATED this 29 day of April, 2014.

                           COOPER & LARSEN, CHARTERED

                           By_____
                                REED W. LARSEN

STATE OF IDAHO   )
                     :ss
County of Bannock )

    CLAY SCOTT BAKER, being first duly sworn, deposes and says:

    That I am the Plaintiff herein; that I have read the foregoing document, knows the contents thereof, and that the facts therein stated are true to the best of my knowledge and belief.

                                _____
                                CLAY SCOTT BAKER

    SUBSCRIBED AND SWORN TO before me this 24th day of March, 2014.

(SEAL)   JAMIE ANDERSON / NOTARY PUBLIC / STATE OF IDAHO

                          _____
                          NOTARY PUBLIC FOR IDAHO
                          Residing at: Pocatello
                          My Commission expires: 9-26-2017